E-FILED
Friday, 13 August, 2021 10:19:13 AM
Clerk, U.S. District Court, ILCD

DANIEL FORENSIC PSYCHIATRIC SERVICES

33 East Broadway, Suite 115
Columbia, MO 65203
Telephone: (573) 443-6930 Fax: (573) 875-4272
aedaniel@aol.com
www.prisonsuicideexpertwitness.com

# PSYCHIATRIC EVALUATION

Name: Charles Wagnon (DOB: [redacted])

Date of Evaluation: April 13, 2021

Charles Wagnon, a 34-year-old white male was given a psychiatric evaluation at the request of Kurt Reitz, an attorney at law from Belleville, Illinois, who represents Peoria and Perkin Union Railway.

Purpose of the Evaluation:

The purpose of the evaluation is to determine whether Mr. Wagnon who was employed as a captain of a tugboat (MV/Zeus) suffers from any psychiatric disorder as a result of an accident on January 5, 2019 and if so, to provide opinions regarding the nature of any psychological injuries, his current employability and treatment requirements if needed.

Procedure:

The procedure consisted of:

1. Psychiatric interview and mental status examination of approximately 1½ hours via Zoom

2. Psychological testing consisting of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2)

3 Review of the Forensic Questionnaire. The Forensic Questionnaire is a document eliciting personal, social and family history, and other information from individuals who undergo a forensic evaluation in my office.

In preparation for this report, I reviewed the following documents:

1. Complaint,
2. Deposition of Lauren Rasmussen, Psy. D dated January 15, 2021,
3. Deposition of Charles Wagnon dated November 2, 2020,
4. Notes by Brian Anderson, Psy. D dated January 21, 2019 to April 13, 2020
5. Letter by Brian Anderson, Psy. D dated May 22, 2020
6. Evaluation and subsequent notes by Lauren Rasmussen Psy. D dated February 4, 2019
7. Evaluation by Dr. Rasmussen dated January 10, 2020

Exhibit E

8. Evaluation and progress notes by Dr. Rasmussen dated February 22, 2021
9. Deposition by Dr. Rasmussen, dated May 4, 2021, and Exhibits

Background History:

In his complaint, Mr. Wagnon alleged that two psychologists had diagnosed him with chronic Post-Traumatic Stress Disorder (PTSD) that causes symptoms including rapid heart rate, profuse sweating, mouth dryness, extreme anxiety and inability to concentrate and think clearly. The symptoms manifest themselves when he thinks about the incident, is working on navigable waters or encounters equipment such as towboats, barges and the like.

Mr. Wagnon further stated that he is no longer able to work on or near navigable water because of his diagnosed chronic PTSD and must seek alternative land-based employment.

Psychiatric Interview with Mr. Wagnon

At the outset of the interview, Mr. Wagnon was informed of the nature and purpose of the interview, and of the fact that full confidentiality could not be assured due to the context of the evaluation. He was also informed that a report of my findings and conclusions would be made available to the attorneys involved in the matter. He understood these conditions and agreed to proceed with the interview and testing.

Mr. Wagnon's Narrative of the Incident and Subsequent Care:

Mr. Wagnon stated that the incident occurred on January 5, 2019 around 8 or 9 pm. He was navigating his tugboat in the Illinois River, near Peoria. He was southbound, nearing the Peoria Bridge. According to him, the bridge was up. He radioed the tender to inform him that he was proceeding south. While moving, he noticed that the green light was turning red and he could not stop the boat. He radioed to stop the motion of the bridge, but "I did not reach him." He tried to get out of the wheelhouse, but he could not. The wheelhouse collapsed on him. He was knocked unconscious. He stated, “The boat was still moving, I could not get up, the throttle was still connected.”

Then he “woke up” and found the bridge was over him. He sustained a few minor bruises. He was worried about crew members. The boat was pushed to the bank. He called into the Houston office and reported the incident. He said, “They sent a port captain and an inspector, who handled all the paperwork.”

Mr. Wagnon stated that he did not need to go to a hospital. He was put up in a hotel (it is unclear how long he was at the hotel). He stated that he went home on January 8, 2019. He did not go back to work for two months.

Mr. Wagnon stated that he was grateful that he was alive. He thought everything was going to be alright. Then, he developed sweaty palms and shortness of breath. His office kept in touch with him, inquiring about his status. According to him, his office arranged for him to see Dr. Rasmussen, a psychologist in Baton Rouge, “sometime late in January or early February

2019". Dr. Rasmussen evaluated him and suggested relaxation exercises and education. She told him that he could go back to work.

Mr. Wagnon stated that he returned to work as a Captain sometime in March 2019. He continued to work as a tugboat captain, mostly operating in the previous route that he navigated, MV/Zeus.

On December 18, 2019, he developed what he characterized as a panic attack with sweaty palms, shortness of breath and increased thirst. He stated that he asked his boss to take him off work. He was again sent to Dr. Rasmussen, whom he saw in January 2020. He stated that Dr. Rasmussen diagnosed him with PTSD. She referred him to Brian Anderson, Psy. D in Arkansas for therapy. Mr. Wagnon saw him for "9 or 10"sessions. Mr. Wagnon stated that Dr. Anderson advised him not to return to work on the river.

Mr. Wagnon's Complaints:

Mr. Wagnon stated that he gets sweaty palms, increased thirst and shortness of breath when he thinks of rivers, bridge, and boats. Occasionally, he gets intrusive recollections of the incident. He stated that his sleep had been disturbed, but generally, he sleeps well. He stated, "I could hardly eat." He reported no nightmares or flashbacks.

Mr. Wagnon stated that he has experienced no severe shortness of breath or sweaty palms since December 18, 2019. He stated, "I have had minor symptoms since then." He added 'I watch my thoughts."

Mr. Wagnon has not received any therapy since April 2020. He was not prescribed any psychotropic medications.

Personal, Social and Family History:

Mr. Wagnon was born in Warren, Arkansas. His parents divorced when he was 15. His father, a welding contractor, is currently disabled due to a stroke. His mother is employed at an Airforce "field" in Jacksonville, Florida. He has two sisters. He grew up with his paternal grandparents, who were farmers. He reported an average, pleasant childhood with no history of physical or sexual abuse.

Mr. Wagnon stated that he attended schools in Norfolk, Arkansas and Irving, Oklahoma. He graduated from McRae High School in Central Arkansas in 2004 and then attended Nashville Diesel College for a brief period but did not graduate.

Mr. Wagnon has been married for the past ten years and has two children ages 11 and 6. His wife has been employed at a packaging and freight company for the past six months.

Mr. Wagnon began employment with Kirby Inland in 2006, where he was a deckhand for the first two years, tanker man for 4-5 years, then a mate pilot, relief captain and finally, captain. He was certified as a Master by Merchant Mariner. Mr. Wagnon was the Master of the Tugboat,

Zeus, involved in the accident on January 4, 2019. He was hauling two empty anhydrous ammonium barges. He denied that the boat had any mechanical problems, and he claimed that it was inspected (Wagnon Deposition).

Mental Status Examination:

Mental status examination revealed that Mr. Wagnon was an average-nourished, average-built adult white male who appeared at his stated age of 34. He was fully oriented to day, date, place and person. He seemed to be functioning in the average range of intellectual functioning as estimated by his vocabulary, general fund of knowledge and reasoning abilities. He did not display any evidence of cognitive impairment in sustained attention, concentration, and memory. His mood was generally within normal limits with normal affect. He denied any self-harm thoughts or a history of suicide attempts. He showed no evidence of psychotic symptoms, including delusions and hallucinations. His insight was fair, and his judgment was okay.

Psychological Testing- Minnesota Multiphasic Personality Inventory-2 (MMPI-2):

Mr. Wagnon completed the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) on 4/13/2021. This instrument is designed to assess personality style and psychological functioning in persons 18 years old and older. The measure provides specific information regarding their approach to test-taking, emotional distress, coping style, perceptions of others, and unusual thought patterns. The MMPI-2 includes 567 true/false items, which are rated by individuals as being mostly true or mostly untrue of themselves. The instrument has been empirically shown to be both valid and reliable in a variety of settings, with norms provided.

*Test Results*:

Mr. Wagnon's pattern of responding to test items was similar to that of individuals who attempt to present themselves in a positive light. Individuals with similar response patterns may feel compelled to appear highly moral and virtuous and/or to deny human frailties. This response pattern is observed in some personal injury claimants who may feel the need to deny psychological problems and/or appear responsible and well-adjusted. This pattern of responding also may reflect a naïve or unsophisticated self-appraisal. The resulting clinical profile may underestimate any psychological issues that may be present.

Mr. Wagnon's clinical profile was within normal limits. No clinical diagnosis is provided. This means that his pattern of responding to items was similar to that of individuals who do not report significant psychological conflict or distress. They view themselves as generally dealing well and being satisfied with their current life situation, including in the work context. Regarding relations with others, individuals with similar profiles are quite outgoing, sociable, and gregarious, and they enjoy attention.

Despite this, some individuals with this profile may experience mild periods of low mood, fatigue, self-criticism, and self-doubt.

Diagnosis (DSM 5, APA, 2013):

1. No Mental Disorder
2. Physically Healthy by self-report
3. Contextual Factors – Tugboat accident.

Review of Records:

*Charles Wagnon Deposition:*

The accident occurred on January 5, 2019 at Perkin Rail Bridge (PPU). He stated that he communicated the bridge tender about 7-8 minutes before. Then the green light turned red as he was about to pass. He called out to the tender, "Are you lowering the bridge?" Reportedly the tender communicated that the bridge was being lowered. However, he claimed that he did not hear the radio communication. The bridge and the wheelhouse collided (Illison). Mr. Wagnon testified that he hit the ground and had some scratches, minor physical injuries which required no medical attention. He returned to work on March 7, 2019, on Jessica Brent. (He could have returned to work earlier)

Mr. Wagnon stated that he had sweats and sleep problems. He saw Lauren Rasmussen, Psy. D on February 4, 2019. She advised him to go back to work but cautioned that he would be nervous. A week later, Dr. Rasmussen called back. Mr. Wagnon told her that he was improving and not having any sweats and he was ready to go back to work.

Mr. Wagnon worked on Jessica Brent for a couple of weeks, then on Athena as a Captain until December 2019. He got off the boat on his own. The last date worked was December 18, 2019. He thought he had a heart attack, but it was not. He saw Dr. Rasmussen on January 10, 2020. Kirby arranged the appointment.

Dr. Rasmussen referred him to Brian Anderson, Psy. D. He had eight therapy sessions from January 21, 2020 to April 13, 2020. He resigned from Kirby on April 20, 2020.

Neither Brian Anderson nor Lauren Rasmussen recommended that he resign. He claimed that Mr. Anderson told him to look for another job.

He testified (page 110) that "Here, again, it's hit and miss. It's when I get to thinking about boats or getting back to work, trying to go back out there, or something to that effect. If I can keep my mind off it, I do okay."

*Rasmussen Deposition and Notes dated February 4, 2019 and January 10, 2020:*

Mr. Wagnon's first visit with Dr. Rasmussen was on February 4, 2019. No physical injuries were reported. When she evaluated him, she did not have any records from Inland Kirby. Kim Cohen referred him. Her evaluation showed that Mr. Wagnon had a normal mental status examination. By history, he was shot at age 9 or 10 and had some history of emotional abuse.

Dr. Rasmussen administered the MMPI, DAPS and PCL. Based on the evaluation, Dr. Rasmussen recommended that he could go back to work. MMPI was valid but showed mild defensiveness. Dr. Rasmussen concluded that he did not meet the criteria for PTSD. However, she was of the impression that he had Post-Traumatic Avoidance.

The next visit was on January 10, 2020. In the meanwhile, he had worked until December 2019. On January 10, 2020, Dr. Rasmussen did not give any psychological tests. According to Dr. Rasmussen, Mr. Wagnon was anxious and looked drastically different. She recommended that he receive counseling. Due to distance, she referred him to Dr. Brian Anderson, a psychologist in Arkansas. She testified that he went back to some employment but not as a tugboat captain. (Fact: he worked on Jessica Brent and Athena from March 7, 2019 to December 18, 2019)

Dr. Rasmussen testified that she diagnosed him with Adjustment Disorder with Anxiety due to the accident in January 2019. She diagnosed him with PTSD as of January 2020. She further testified that his PTSD was due to the accident.

Dr. Rasmussen's notes dated February 4, 2019 show that she administered several psychological tests, including MMPI-2 and DAPS. The data from these tests indicate that Mr. Wagnon did not meet the criteria for PTSD or Acute Stress Disorder.

*Anderson Notes and Deposition:*

Dr. Anderson saw Mr. Wagon upon referral from Dr. Rasmussen. He provided eight therapy sessions from January 21, 2020 to April 13, 2020. He diagnosed Mr. Wagnon with PTSD. The notes indicate that he had no symptoms beginning the fifth session. The therapy was terminated because Mr. Wagnon's symptoms resolved. Dr. Anderson did not recommend any further treatment. There is no clear indication that Dr. Anderson recommended that he not go back to work on the river in his notes or deposition.

*Rasmussen Notes dated February 4, 2021 and Deposition dated May 4, 2021:*

Dr. Rasmussen evaluated Mr. Wagnon again, this time after being referred by his attorney. Dr. Rasmussen interviewed him. He was asked to complete three self-administered tests: Beck Depression Inventory-2 (BDI-2), Beck Anxiety Inventory (BAI) and PCL-5.

Dr. Rasmussen diagnosed him with PTSD, Delayed Onset in Remission. She advised him not to return to work as a tugboat captain.

Dr. Rasmussen's deposition shows that she was aware that Mr. Wagnon had used a recreational boat without any problems.

Discussion and Conclusions:

Based on the psychiatric evaluation and review and analysis of all the available records, I conclude with a reasonable degree of medical certainty that Charles Wagnon does not have a mental disorder.

While he was exposed to a traumatic situation involving the accident on January 5, 2019, where the wheelhouse of his tugboat collapsed on him, he did not sustain any significant physical injuries or psychological injuries. His claim that he lost consciousness (my interview) was not consistent with facts. His behaviors during the next few weeks were within normal limits. Although he claimed that he had sleep problems, sweaty palms, and shortness of breath, when he thinks of the accident, he did not meet the criteria for a diagnosis of Acute Stress Disorder or PTSD when evaluated by Dr. Rasmussen on February 4, 2019. His claimed symptoms improved within a week or two after he saw Dr. Rasmussen. Although he could return to work, he chose to sit out until March 7, 2019.

Mr. Wagnon worked as a tugboat captain on Jessica Brent and Athena, operating the same route, without any problems until December 18, 2019, when he took himself off work, claiming that he had a panic attack. He did not go to an ER or see a physician to address his claimed panic attack.

Based on the subjective symptoms, Dr. Rasmussen diagnosed him with PTSD in January 2020 and referred him to Dr. Anderson. After five sessions, his claimed symptoms improved, and he no longer had any symptoms. However, he chose to find a job on land working as a mechanic.

Dr. Rasmussen confirmed his continued absence of symptoms in her evaluation in February 2021. The self-administered psychological tests did not show any symptoms.

Mr. Wagnon claims that he becomes sweaty and has shortness of breath when he thinks about the accident, bridges and water. He claimed that "If I can avoid thinking about it, I am okay." His claim of the symptoms is not consistent with facts that include him operating a vehicle traveling on bridges almost daily, operating a recreational boat and carrying on with normal life.

I further opine that the claimed symptoms are most-likely a product of his thinking, motivated by secondary gain surrounding the litigation.

Employability:

There is nothing in his psychiatric profile that would preclude him from functioning as a tugboat captain.

Treatment Recommendations:

As he does not have a psychiatric disorder, he does not require any psychiatric treatment. To the extent he claims that he has symptoms when he thinks of boats, bridges and water, he may benefit from supportive therapy. Therapy may help him understand his motivation and its relationship with his claimed symptoms.

s/ A.E. Daniel, M.D.

[redacted]

A. E. Daniel, M.D.

Date of Report: May 13, 2021